**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| Lida Eugenia Guaita Quinapanta, | Civ. No. 26-138 (JWB/JFD) |
| Petitioner, | |
| v. | |
| Pamela Bondi, *Attorney General*; Daren K. Margolin, *Director for Executive Office for Immigration Review*; Executive Office for Immigration Review; Kristi Noem, *Secretary, U.S. Department of Homeland Security*; Department of Homeland Security; Todd M. Lyons, *Acting Director of Immigration and Customs Enforcement*; Immigration and Customs Enforcement; and David Easterwood, *Acting Director, St. Paul Field Office Immigration and Customs Enforcement*, | **ORDER ON PETITION FOR WRIT OF HABEAS CORPUS** |
| Respondents. | |

---

Cameron Lane Youngs Giebink, Esq., David L. Wilson, Esq., and Lee Anne Koller Mills, Esq., Wilson Law Group, counsel for Petitioner.

Ana H. Voss, Esq., and Trevor Brown, Esq., United States Attorney's Office, counsel for Respondents.

---

This case asks whether Respondents may detain a noncitizen under 8 U.S.C. § 1225(b)(2) after previously releasing her from custody under 8 U.S.C. § 1226 and placing her in removal proceedings under 8 U.S.C. § 1229. The answer is no. Because Respondents previously exercised authority to release Petitioner Lida E.G.Q. under § 1226, that statute—not § 1225—governs detention while removal proceedings remain pending.

Respondents' position has been often rejected in this District. *See, e.g.*, *Maldonado v. Olson*, 795 F. Supp. 3d 1134, 1142–48, 1150–52 (D. Minn. 2025); *Jose J.O.E. v. Bondi*, 797 F. Supp. 3d 957, 968–970 (D. Minn. 2025); *Mayamu K. v. Bondi*, Civ. No. 25-3035 (JWB/LIB), 2025 WL 3641819, at *7–8 (D. Minn. Oct. 20, 2025). Therefore, the Petition is granted to the extent that it requests release.

## BACKGROUND

Petitioner is a citizen of Ecuador. (*See* Doc. No. 1, Petition ¶ 13.) United States Border Patrol encountered her upon entry into the country in 2021. (*Id.* ¶¶ 28–29.) She was thereafter released on her own recognizance. (*Id.* ¶ 29.)

The standard Order of Release on Recognizance, Form I-220A, states that the noncitizen is being released "[i]n accordance with section 236 of the Immigration and Nationality Act," which corresponds with § 1226. Neither side submitted evidence showing that order was ever cancelled or revoked in Petitioner's case.

Petitioner's application for asylum was denied by the Executive Office for Immigration Review, and her appeal of the decision is pending before the Board of Immigration Appeals. (*Id.* ¶ 30.) Petitioner alleges that she has no criminal history that would mandate detention under 8 U.S.C. § 1226(c). (*Id.* ¶ 32.)

On January 9, 2026, Immigration and Customs Enforcement officers apprehended Petitioner. (*Id.* ¶ 33.) No warrant of arrest was provided. (*Id.*) At the time her petition was filed, she was detained at Fort Snelling, Minnesota. (Petition ¶¶ 14, 34.)

Although Respondents were ordered to answer with a memorandum explaining their position and affidavits and exhibits as needed to establish the lawfulness of

Petitioner's detention (*see* Doc. No. 3), Respondents limited their response to one page

stating they assert all arguments raised in *Avila v. Bondi*, No. 25-3248 (8th Cir. docketed

Nov. 10, 2025).

Respondents were also enjoined from removing, transferring, or otherwise

facilitating the removal of Petitioner from the jurisdiction of the United States District

Court for the District of Minnesota pending further court order. (Doc. No. 3 at 2–3.)

Despite this clear directive, issued about an hour after the Petition was filed on January 9,

2026, Respondents report that Petitioner was transferred to a facility in Texas on January

10, 2026. (*See* Doc. No. 6.) Respondents have since coordinated with Petitioner's counsel

to "work[] out a mutually agreeable solution for Petitioner's return to Minnesota." (*Id.*)

## DISCUSSION

### I.      Legal Standard

A writ of habeas corpus may issue where a petitioner is in custody in violation of

the Constitution or federal law. 28 U.S.C. § 2241(c)(3). The petitioner bears the burden

of establishing, by a preponderance of the evidence, that the challenged detention lacks a

lawful statutory basis. *See Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn.

2025) (collecting cases).

Immigration detention, like all civil detention, must rest on an express

congressional grant of authority and must bear a reasonable relation to its statutory

purpose. *Zadvydas v. Davis*, 533 U.S. 678, 687, 690 (2001) (quoting *Jackson v. Indiana*,

406 U.S. 715, 738 (1972)). Section 2241 confers jurisdiction to determine whether the

Executive Branch has statutory authority to detain an individual, including in the

immigration context. *See id.* 687–88.

## II.   Analysis

Petitioner challenges only the lawfulness of her detention under federal law. She

does not contest any removal order, the conduct of removal proceedings, or the execution

of removal. Therefore, jurisdiction lies under 28 U.S.C. § 2241 to review the legal basis

for custody. *See, e.g.*, *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154–55 (D. Minn.

2025). Because the Petition is not directed at removal, statutory channeling provisions do

not apply either. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018).

The Immigration and Nationality Act ("INA") distinguishes between inspection,

removal proceedings, and detention authority. "Inspection" is the process by which

immigration officers determine whether a noncitizen seeking entry at the border or a port

of entry may be admitted to the United States. *See* 8 U.S.C. § 1225(a). Section 1225

governs that process and generally requires detention in the case of a noncitizen "seeking

admission." *Id.*; *see also Maldonado*, 795 F. Supp. 3d at 1149, 1152.

Section 1226, by contrast, governs detention of noncitizens already present in the

United States. *Jennings*, 138 S. Ct. at 846. Detention under § 1226(a) is not mandatory

and permits release on bond or recognizance. *Maldonado*, 795 F. Supp. 3d at 1149–50.

Respondents did not specifically respond to Petitioner's claim that § 1225(b)(2)

does not apply to her. However, they have previously asserted in other cases, such as

*Avila*, 2025 WL 2976539, at *5, that § 1225(b)(2) authorizes the detention of certain

"applicants for admission" pending removal proceedings.

The vast majority of district courts considering that assertion, including this Court,

have determined that the text, structure, and function of the INA's detention provisions all indicate that § 1225 does not apply to noncitizens released into the interior of the country, like Petitioner. *See Eliseo A.A. v. Olson*, Civ. No. 25-3381 (JWB/DJF), 2025 WL 2886729 (D. Minn. Oct. 8, 2025); *Mayamu K. v. Bondi*, Civ. No. 25-3035 (JWB/LIB), 2025 WL 3641819 (D. Minn. Oct. 20, 2025); *Khalid B.Q. v. Bondi*, Civ. No. 25-4584 (JWB/DJF), Doc. No. 10 (D. Minn. Dec. 18, 2025); *Xuseen A. v. Bondi*, Civ. No. 25-4514 (JWB/DJF), Doc. No. 16 (D. Minn. Dec. 19, 2025).

*Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), does not alter the result either. Respondents cite to it rely heavily as if it reflects an independent adjudicatory resolution of statutory ambiguity. It does not. The Board of Immigration Appeals ("BIA") is a component of the Department of Justice ("DOJ") and operates under the Attorney General's supervisory authority. Its precedents are subject to review, revision, and overruling by the Attorney General, who sets binding interpretations of the Immigration and Nationality Act for the Executive Branch. *Yajure Hurtado* thus reflects the DOJ's adopted litigation position concerning the scope of § 1225(b)(2), not an interpretation generated independently of that position.

And even if *Yajure Hurtado* were such an independent interpretation, it would run headlong into the statute's text and structure for the reasons already explained. Where an agency's reading conflicts with the statute Congress enacted, it does not control. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024) (explaining that only long-standing and consistent agency interpretations merit weight); *see also Belsai D.S. v. Bondi*, Civ. No. 25-3682 (KMM/EMB), 2025 WL 2802947, at *7 n.5 (D. Minn. Oct. 1,

2025).

In habeas review, the question is not whether the Executive Branch has spoken with one voice—whether through the DOJ or the BIA—but whether the detention authority it asserts is grounded in statute. That determination remains for the Article III courts. *See Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) ("[T]he habeas statute … does not require courts to defer to the Attorney General's interpretation of the statute. Rather, it requires the courts to determine whether the detention is lawful.").

The analysis here is straightforward. Border officials apprehended Petitioner, released her from custody under § 1226, and allowed her to remain in the community for over four years. Nothing in the record suggests Respondents ever revoked that release based on flight risk, danger, changed circumstances, or any other reason.

Section 1225(b)(2) provides no authority to revisit that custody determination later. The Supreme Court has consistently treated §§ 1225 and 1226 as addressing different populations at different procedural moments, not as interchangeable sources of detention authority. *Jennings*, 138 S. Ct. at 836-38. Nothing in § 1225 authorizes Respondents to revive mandatory detention just by recharacterizing a previously released noncitizen as an applicant for admission. *See, e.g., Jose J.O.E.*, 797 F. Supp. 3d at 969–70. The statute contains no mechanism for that switch. Allowing Respondents to toggle between detention regimes in this way would collapse the statutory structure Congress enacted and render § 1226 largely superfluous. While Congress may extend detention authority by statute, the courts and the Executive Branch cannot.

On this record, Petitioner's continued detention rests on a statute and an

interpretation that do not apply and is unlawful. *See Khalid B.Q.*, Civ. No. 25-4584, Doc. No. 10 at 6; *Xuseen A.*, Civ. No. 25-4514, Doc. No. 16 at 7. Further, even if Respondents seek to detain Petitioner under § 1226, they have failed to submit any evidence that there is a valid basis for detention at all. Thus, she is entitled to a writ of habeas corpus that grants her immediate release subject to the conditions in her original Order of Release on Recognizance. *See Munaf v. Geren*, 553 U.S. 674, 693 (2008) (describing release as the "typical remedy" for "unlawful executive detention").

Where the record shows Respondents have not identified a valid statutory basis for detention in the first place, the remedy is not to supply one through further proceedings. Because Petitioner has shown Respondents have not invoked a provision of the Immigration and Nationality Act that authorizes her continued detention, the petition for a writ of habeas corpus is granted, and Petitioner's other habeas claims are not reached.

### ORDER

Based on the foregoing, and on all the files, records, and proceedings in this case,

**IT IS HEREBY ORDERED** that:

1.	Petitioner Lida E.G.Q.'s petition for a writ of habeas corpus (Doc. No. 1) is **GRANTED**.

2.	Respondents shall immediately release Petitioner from custody. She must be released in Minnesota and subject to the conditions of her prior release on recognizance.

3.	Respondents shall confirm the time, date, and location of Petitioner's release within 48 hours from the date of this Order.

4.    Respondents may not re-detain Petitioner under a statutory theory this

Court has rejected in this proceeding absent materially changed circumstances.

5.    Petitioner's other claims are not reached.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: January 14, 2026                     *s/ Jerry W. Blackwell*
                                           JERRY W. BLACKWELL
                                           United States District Judge